Case number 20-1008 et al. National Labor Relations Board petitioner v. NP Palace LLC doing business as Palace Station Hotel and Casino. Mr. Rosenfeld for petitioner IUOE. Ms. Beard for the respondents. Mr. Rosenfeld is now unmuted. Good morning. Good morning. David Rosenfeld for the petitioner Local 501 of the International Union of Operating Engineers. Local 501. Mr. Rosenfeld, can you get a little closer to your mic? Is this better? Yeah, a little closer. All right. Is this better? That's much better. Go ahead. All right. Thank you. Yeah, thanks. Local 501 organized five groups of slot techs in five casinos owned by the same employer. In each case, the employer refused to bargain. And in each case, either the Ninth Circuit affirmed the board's decision that this was an appropriate unit and that the slot techs were not guarded. This court then entered consent orders in the other three in May of this year. This case involves one of those. Ms. Beard and I were on the same side in the case involving Palace seeking to enforce the board's judgment. We're now on opposite sides on this question. The first issue before the court that I want to address is this question having to deal with whether this court's decision in Terrace and other cases holding that where an employer does not raise the issue of confidentiality and offer to bargain about it when the union makes a request for information that is relevant, does it then waive its right to bargain about that issue after certification is issued? And what I want to emphasize in terms of this oral argument is that we have a situation where the board has offered a number of rationales for changing its position with respect to this doctrine. None of these rationales meet any test of reasonableness. Reasonable decision making. Let's address the first issue that the board uses to justify this change in position. They say, well, we have to protect those few employers who happen to prevail on the test of certification from having to waive their right to do so. As we pointed out in brief, there really is no right in the statute to do something illegal. The statute imposes limited remedies on the employer who refuses to bargain, but nonetheless makes it an unfair labor practice. Just so that I'm clear, counsel, what are the remedies if an employer refuses to bargain on the basis that it believes that the union was not properly certified, but the board finds that to be, that defense to be, to the unfair labor practice to be without merit? What are the remedies available to the board at that point? The remedy to the board is an order from a court ordering the employer to bargain with that unit, but attached to that obligation, that remedy are many other aspects. For example, if an employer makes unilateral changes to working conditions during that period, when it's challenging certification, the employer can be ordered to reinstate the former conditions, make employees whole and bargain over those matters retroactively during the year or two years it delays the certification. If the employer denies Weingarten rights to the employees, the employees can be given those rights. So there are many of the remedies attached to it. And the statute also gives the union some leverage here because theoretically the union can engage in an unfair labor practice strike. And there's actually a strange position in the law that says if the employer is refusing to So the statute has built into it a mechanism to deal with the remedy issue, both in terms of the court order, as well as in terms of what the union can do here. Well, thank you. I mean, I guess then that raises a question for me is if all of those remedies are available, then why is it necessary that it also be available, so to speak, that the employer waives any right to challenge or on confidentiality grounds, any information requests? Because that is what's built into the statute, because the statute says the employer has a choice. You can recognize a union bargain, bargain all mandatory subjects, or you can choose the other route. The other route has certain remedies and penalties applicable to it. But there's no in between. The statute doesn't envision part bargaining, part not bargaining, part replying to information requests, not replying to others, because Didn't the board, didn't the board seems to believe that that the employers who want to both challenge certification and raise a confidentiality question can't really do both. You seem to think that it's not accurate, right? The board is correct that under what's been the law in every circuit that's had these issues and the board up to this point is that the employer is faced with between a rock and a hard place, but that's what the statute envisions. That is, if they have a confidentiality concern, or what's most unusual about this case is the board says, well, it doesn't apply to this confidentiality concerns. It applies, for example, if you need clarification of the union's request, if you think it's too burdensome, if you think it's not all relevant, you want to talk about the format. Before you go, why is that catch 22 implicit in the statute? It's implicit, if not explicit in the statute, because the statute is the employer one remedy, which is it allows the court to stay the board order. The board order is not stayed and explicit in the statute is this choice. You either bargain with the union or you don't bargain with the union. If you don't bargain with the union, as Judge Randolph, you said in that decision issued on Friday, in the Davidson case, you choose the option of committing an unfair labor practice. So the statute established by Congress, the procedure established by Congress was super binary choice. You either bargain or you don't bargain. Nothing in between, because that makes no practical sense. What if the employer says you've asked for 10 things we think that nine of them are fine, but the 10th thing we think is confidential and we'll give it to you so long as you sign a protective order or confidentiality agreement. We're not bargaining. This is, you know, take it or leave it. This is what we'll do, but we'll give you all 10 things as long as you sign this agreement. And the union says, no, you know, you have to bargain. What happens in that case or what would have happened before this decision in that case? The union would have accepted the employer's offer, but that would have constituted under current board law and law of this, of all the other circuits that dealt with this, an offer to bargain and would have waived its right to test certification. It's sort of a white line. Exactly. That's the dilemma the board is trying to avoid here, isn't it? Yes, but that's a dilemma created by the scheme. For example, the employer's faced with the dilemma in all sorts of circumstances. It can't make unilateral changes, your honor, without bargaining with the union first. So the dilemma is the procedure, the board adopted here, avoid that dilemma. It avoids that dilemma on confidentiality, but it also, the way the board adopted it, avoids it on any issue regarding information requests. For example, they say this applies to a union request. It might be burdensome or irrelevant or not clear. For example, the second request having to do with customer complaints. If they were unclear as to how far we want or what do we want, what do we really want? They could have certainly clarified that, that's what bargaining is about, but they chose not to do it. So it is only a dilemma, but it's a dilemma that applies in every other circumstance where the employer is either testing certification or withdrawn recognition or refuses to bargain with the union. The statute and the process creates that dilemma. Either you recognize the obligation to bargain or you don't, and if you don't, there are consequences to it. So help me understand what would have happened before this case if the employer had said, I'm not giving you anything because if I do, it'll be construed as bargaining and I want to challenge the certification. And so the union has made several information requests. The union would request an unfair labor practice charge for refusing to provide the information and for refusing to bargain. When would the union be able to actually get any documents under the prior regime? It wouldn't be until after the certification issue had been resolved by the board, right? Correct. But it would have gotten all those documents information retroactive to when it made a request as opposed to only potentially prospective after it goes through this lengthy, accommodative bargaining process. So the point that we're trying to make in this case is that that interferes with the bargaining process. It means the union, you wait two years, then you sit down and it's the same information. You don't get it. You may have to wait an additional period of time. You may not even get it depending on bargaining. We're under the old regime. You would have sat down at the table and said, well, employer, you waived it. But I don't know of an employer, a union that would not have said to the employer, you got confidentiality concerns. We have a bargaining relationship. Let's deal with it. And that's particularly appropriate here because you're dealing with slot techs and these policies we are concerned about are the ones they know about. These are the ones that policies that they have to enforce and live by. So this isn't one of these cases, like in Detroit Edison, we've got the confidentiality interests of the employees who took the test, nor is it a case like in Detroit Edison, where you had a psychological test where nobody was seeing the test themselves. It was kept secret. And here the employer offered no evidence as to exactly how confidential these policies are. Let me try to understand the impact of the board's decision here. You're saying that now instead of ordering the production of the documents, the board is just ordering the parties to bargain over the production of the documents. What happens then? Well, theoretically, you go back to another unfair labor practice proceeding or potentially a compliance proceeding where the board does what Detroit Edison and this court said an OCAW have to do. The board then has to balance the interests of the parties and decide whether the information the union sought really was that confidential or whether there's some other mechanism to provide it. That is a long-term delay, what we're seeking to avoid in this case, allowing employers to then delay the production of any information bargaining on an accommodative basis while we're trying to get a first contract, which is always very difficult. What in the statute, what provision of the NLRA has the board violated here? It's violated 29 U.S.C. Section 160 G, which says the board decision is filed subject only to a state of the court. So the statute envisions in 29 U.S.C. Section 160 F, the right of either party to petition for review. And this kind of procedure violates that provision other than the statute has been interpreted by this court and the Supreme Court to say you have a binary choice. You either bargain or you don't bargain. And if you do bargain on any subject, you waive the right to challenge the certification and you've challenged, waived your right in a successorship case or withdrawal of recognition case or any other bargaining case. But the dissent, as I read the dissent, the dissenting board member would have solved that problem by allowing, I think, bargaining over the information request without waiving the employer's objection to the certification. Do you believe that violates the statute also? No, because that would allow the union to at least resolve this question because that would have been a form of bargaining. You really can't avoid as a form of bargaining, but it doesn't waive the right. But such bargaining is not practical because there's no way to piecemeal bargaining. But under the boards, just to continue the questions Judge Wilkins was asking you, under the board's new remedy, it will result in bargaining over, it'll result in one of two things, either bargaining over the information request or an unfair labor practice. Won't it? Isn't that what you want? No, because we need, what we want is the information so that we can bargain a first contract rather than delay and interference with bargaining inherent and then trying to resolve additional questions. Remember, Your Honor, when you make your argument that way, it just sounds like to me, the board has decided for whatever reasons that procedurally this makes more sense than the previous rule. But I haven't seen yet why that creates a statutory problem. It creates a statutory problem because this court has said repeatedly that you don't engage in piecemeal bargaining. You either bargain every subject or no subject because bargaining is not effective if the employer says, we're not going to bargain about that issue. We're not going to bargain about this issue. We're not going to provide that information because you can't bargain piecemeal. Well, then why is, why, to follow up on Judge Tatel's question, why then the dissent says that the better remedy than what the majority wanted to do was to, was to allow the employer to bargain an accommodation of any confidentiality issues with the union. That's piecemeal bargaining, isn't it? It is, and I'm not, I didn't suggest in our brief that we agreed with that remedy either. Well, I'm just trying to understand what your position is as to whether or not that is a remedy that, that is consistent with the statute. Is it or isn't it? I really don't think it is. For the reason I've explained that it's not effective. It's not going to do any good for either party because you're focusing upon a very limited sphere of certain policies that may or may not be confidential. And if you're not bargaining about the whole contract, so it doesn't do you any good in my view to do that. It's very impractical and violates again, this principle that the courts have recognized that inherent in the obligation to bargain in good faith is you bargain about all mandatory subjects. You can't pick and choose which subjects to bargain about because that interferes with the bargaining process. And just so that I'm clear, if the, if the employer refuses to bargain over information requests or anything else, and the board ultimately considers that to have been an does the board consider, is the board required to consider the employer's confidentiality concerns? Or are you saying that those concerns aren't considered at all by the board because they have been waived? If they've been waived, for example, if a union makes a request in a bargaining setting where there's no test of certification or withdrawal recognition, and the union asks for it and the employer says, doesn't respond or refuses to provide at all, but doesn't offer to bargain about the confidentiality, it weighs that right. So let's suppose the union had requested, you know, customer complaints, but it also requested the personnel files of all members of management, just to, for the sake of this hypothetical. You're saying that if the employer later loses its challenge to the certification, it has to turn over all of the documents that the union requested, including the personnel files of all members of management? No, because there's a different issue triggered, your honor, by that question, which is relevance. Management personnel files are not presumptively relevant. The union would have to show some relevance. But in this case, remember the board found the union's request for these policies relevant. So you'll get to the next question. Okay, it's relevant. You normally have to provide an employer. If you've got some confidentiality concerns, you either need to waive it or agree to bargain and resolve that question. So there's some things that are not relevant to bargaining, and the board would not issue complaint and we would not be entitled to it. And that's seen in this case where the board found, for example, that social security numbers weren't relevant and didn't order their production. So relevance isn't waived, but confidentiality is waived? That's right. Why does that make sense? So let's suppose then you have, you know, proprietary documents about, you know, security, how slot machines work, etc. Trade secrets. Trade secrets, those get turned over without any sort of requirement that they be kept confidential by the union. The union could sell them to the highest bidder or do whatever it wants with them, post them on the internet. Yeah, I understand that theoretically, there could be some abuse here. But the board hasn't referred in its decision to any abuse by a union ever in getting this kind of information. And remember, that would be contrary to the union's interest to do that, because it represents slot techs in five casinos, and to do anything to undermine their job, their relationship with employers would be contrary to the union's position. And keep in mind, again, this is a circumstance where theoretically, these slot techs already know these policies. But the slot techs are under some sort of confidentiality obligations that are a part of their employment relationship, correct? We don't know that. The problem in this case, Your Honor, is among other things, that under traditional board law, if you have a confidentiality concern, and you want to raise it, you got to provide some evidence. All the employer did in this case, to simply state in its response in order to show cause, oh, these are confidential, no factual information, no evidence. And in our position, having failed to do that, that's a waiver. And then the other three casino cases dealing with this, including NP Palace One, the board said, that doesn't effectively raise confidentiality, because it's just a generalized concern for confidentiality without providing any specifics as to why it's confidential. No evidence, nothing. We don't know whether these policies are posted to the public in the casino when you walk in and say, here are the rules of the road, don't forget we're watching you. And we don't know that the slot techs are under any formal or informal confidentiality provision. We don't know whether these are just the rules of the Nevada Gaming Commission. We know nothing about them. You can still bargain over the questions you just raised, can't you? Yes. For example, we can bargain about providing these. Right. Now that the question of the validity of the unit has been settled, the answer is for you to go back and bargain. That's true. We can go back and bargain. But when we sit down at the table and bargain, we say, by the way, there's still this information question we didn't get. Okay, let's bargain about all the confidentiality issues, what we're going to give you, what we're not going to give you. And we say, wait a minute, we want to bargain about everything. And now you've shut us off a different path when we should have had this information to start, rather than delay the bargaining process from the get-go in the first contract. But we've got a year before, theoretically, the employer can withdraw recognition. So this becomes an interference, again, with this basic concept that when you withdraw recognition, you don't bargain after certification, you don't recognize a unit successorship situation. It's either you bargain or you don't bargain. You provide relevant information, or you don't provide relevant information. And you waive your right if you don't offer to bargain about unilateral changes, information. That's the way the entire system works. And the board has never carved out an exception until this time, this case, to that concept that the union has to bargain about, I mean, the employer has to bargain about all mandatory subjects and provide all unless either of my colleagues has any more questions. Judge Tatum, I had a question about the customer complaints. And why is that ripe and final for us at this point? Why do we have jurisdiction to decide this issue? It's because there is a balancing test. I understand that. And the balance falls in our favor here strongly because as to these customer complaints, we don't get them. Mr. I don't think that's the question. I don't think that's the question Judge Wilkins asked you. The board says this isn't final because it's been remanded to the board. It's been remanded to the regional office to decide whether or not the information requested is confidential or not. In other words, it's not final. It's ripe, relying upon this court's decision in the OCW case that held that were an employer delayed providing the information. That was a harm to the union. And it's more of a harm to the union in this case, because not only is it delayed potentially for years, just as not as extreme in the OCW case, but still delayed, but also the board has narrowed the circumstances under which we can get customer complaints to only those circumstances where there's been some adverse impact on the employees. For example, we can't get that information now for training purposes or to find out why you didn't discipline people. So the board has narrowed the circumstances and delayed both of which are a harm. I'm sorry, I'm confused. I thought the only thing the board decided with respect to customer complaints was that they're no longer presumptively relevant. No, I think they decided they're presumptively relevant when the customer complaint has an impact such as discipline, or you don't get a wage increase. They said otherwise. Not presumptively relevant, then they're relevant. They're relevant. But I think once you say relevant, for this purpose, it means presumptively relevant. And as long as we can show what they said was as long as there's some evidence that the customer complaint had that kind of an impact, it becomes relevant, presumptively relevant. Judge Wilkins, do you have an answer to your question there? I'm not sure that I do, but I have no further questions. Judge Randolph? No, I don't. Okay. Okay. Thank you. We'll hear from the board. Good morning. I'm Heather Beard for the board, and we're here to seek some reinforcement of our order against the casino and denial of the union's petition for review. So as you've been discussing, what the board did here in this case is revise a remedy in information request cases such as this, where the employer has asserted a confidentiality or any other legitimate interest in requested information while it's pursuing judicial review of a union certification. And as the board thoroughly explained, the new accommodative bargaining remedy reconciles past conflicting precedent and does appropriately balance the competing equities between the employer and the union that are at stake. And here the board reasonably applied its new remedy in which the casino timely asserted its legitimate confidentiality interest in information related to security and precautions against illegal gambling. So to begin with a discussion that Judge Wilkins was having with my esteemed opponent, Mr. Rosenfeld here, with regard to the dilemma, I believe that the union concedes that in these situations, there is conflicting precedent or this dilemma, or as the board called it, a catch-22 between on the one hand, if an employer has to offer to accommodate an interest such as confidentiality, this court and other courts, because the board has held, that means no longer can the board challenge or test certification because it must offer to accommodate such an interest. And in doing so, it then takes a step into bargaining, which waives its ability to test with its right to test certification. And in this case, all the board did is say, you know, we're still going to put the employer on the hook for a violation. There is still a violation of the act, even if the employer does not offer to accommodate in something that they claim they have a confidentiality interest in. Let me interrupt you for one second, just to be clear on what the board's position is. So is it your position that if the employer says you've asked for 10 things, and I'm willing to give you all of those 10 things, so long as you sign this confidentiality agreement union, but if you're not willing to sign that, then I'm not going to give you those things. That is an accommodation, that's a step into bargaining, and that waives their right to challenge certification later? Yes. Okay, continue. So given that that is what the law is, what the board did within its discretion to assess remedies under 10c of the act and to provide a remedy, so long as it's not contrary to the act, the board decided that in this narrow in the Detroit Edison case, when the Supreme Court has said that the board should not craft a remedy without due concern to confidentiality interests, the board, particularly cognizant of that, decided that it will still find a violation, but what it will do is allow the employer if and only if it presents a legitimate, and there's the check on just any sort of claim, a legitimate that should a casino have to turn over security, trade secrets, money laundering prevention, those types of things. But let me let me interrupt you again. So prior to this case, if a union refused to bargain at all and refused to provide any information because doing so might waive their rights to challenge the certification, and the union brought the well, an unfair labor practice was found, at that point, the board could order that documents would be turned over, right? That's correct. The board would order that. That's true. But under Detroit Edison, wouldn't the board have to give due regard for confidentiality anyway at that point? You know, I just don't understand where this waiver of confidentiality comes from. Sure. Well, under Detroit, and in Detroit Edison case, it was not, first of all, a case where there was the test of certification also ongoing. So the difference there is that there's a different sort of, there would be a test for confidentiality that would have to take place. However, if there was a, not only would there have to be a confidentiality interest shown by the employer, but even under Detroit Edison, under board law, the board, rather, the company would have also had to offer to accommodate, accommodate the confidentiality interest at the time the request was made. And that's where the conflict in this case and those where there's a test of certification pending comes in. Because in a test of certification, if you also have to offer to accommodate, then you're going to lose your ability to test the certification. And why not just get rid of that part of the board law and problem solved? I'm sorry, your honor, I guess I'm not sure which part of the board law. The fact that if you don't offer to accommodate at that point, there's a waiver. Well, the board decided that the best way to reconcile, and as Mr. Rosenfeld said, there are courts, including this one, who have held that any step toward bargaining, such as accommodative bargaining like that, loses that right. The board has said, well, we can't make the courts of appeals change their precedent on that. But what we can do is strike a narrow, a narrower solution that actually solves the problem while maintaining both the union's ability to later bargain specifically over that information and allow the employer to challenge the certification. Well, I think I may not have asked my question clearly. So my understanding is that before this case, what would happen if an employer refused to provide information, refused to bargain over providing information, and it was later found to have committed an unfair labor practice for doing so, and any challenge to the certification was rejected? Okay. Then at that point, the board would simply order the production of the information that had been requested. Yes, that's correct. There wouldn't be any bargaining over it. The board would just order. That's correct. Wouldn't the board at that point have an obligation under Detroit Edison to consider the employer's confidentiality concerns, even if the employer hadn't sought an accommodation or bargained earlier? There wouldn't be, Your Honor. I don't believe there would be that sort of obligation or any process if there was such an obligation because of the way that the law stood at the time prior to this case. And so the board, rather than overturn, I believe, that precedent, which, you know, there is a good reason for a violation to be found when an employer starts to bargain down one path while at the same time challenging a certification. That particular piece, that is there so that an employer can't, for example, start bargaining and then pull the rug out from under the union by saying, well, actually, your certification is bad. So there's good reasons why that constitutes a violation. But the beauty of what the board did here is that in changing the remedy for specific cases in which there is a mechanism, a legitimate, in a pleading where there has been a showing by an employer that there's a legitimate confidentiality interest, they won't, they will no longer be ordered to simply turn over the information without that mechanism to preserve an interest that they may have shown that is legitimate. And so that's what the board chose to do here. I guess all I'm saying is that why, is there anything inconsistent with the statute for the board to just say that from now on when, if an employer refuses to provide information, and that's found to be an unfair labor practice, we will order turning over the information, but we will no longer rule that the employer has waived any confidentiality objections or protections that it has. We will just simply take that into account when we order the production of the documents and order them subject to whatever confidentiality requirements are appropriate in that case. Sure. The board, I think the board could have done something like that, but the problem with something like that, unlike here, is there wouldn't then be a mechanism for the board to adjudicate that confidentiality interest in the way that this type of a narrow remedy correction does, because now there can actually be bargaining over the scope of that, and that could be worked out by the parties, which is something that the act contemplates would prefer, rather than a separate unfair labor practice proceeding. Therefore, under what you have posited, Judge Wilkins, there may not have been any sort of interest then. The employer would not have to show during the course of anything leading up to the board issuing its order any confidentiality interest. Then it seems to me the parties would have to start over from even an earlier point, which would delay things further. I think the board's choice here, which was well in its ambit to do, to continue to find a violation and yet to, in certain circumstances, change the remedy, actually does best fulfill the interest of the employer and the union in these circumstances. Does that answer your question? Well, what about all of the various forms of prejudice that petitioner says that this places it in, particularly its inability to really get started with the bargaining and really represent the union effectively because it can't get basic information that it needs to begin that process? Sure. I mean, the board wasn't ignorant of that, nor the board actually discussed that at some length in its recent decision. I believe it was on page six of the board's decision and order, where they said they recognized that there may be some delay even after the certification is upheld, but the delay, as they noted, can only happen where there's been an asserted confidentiality interest that it's deemed to be legitimate. Given that in this instance, there was such a legitimate interest that was identified, the board found that it's going to choose not to ride roughshod over the that it's possible, even if the board has, even if bargaining has begun and not over this information for the parties to get started. I mean, that's what the board was trying to do. This was a summary judgment motion that the board was trying to push forward as much as it could so that the certification issue could be resolved and therefore the, you know, holding up just part of the information was something that the board considered as not too prejudicial to the union, while at the same time allowing the employer... Is there anything in the record to indicate whether these slot technicians signed non-disclosure agreements with the employer? I'm not sure. I don't believe there is. I'm not aware of them being any, but I do know... The reason I ask that is the union is not totally without resource in getting ready to bargain because it has available all the employees to talk to, to find out what, assuming that there's something that can be said about the policies rather than violating a non-disclosure agreement. The union is totally free to talk to its members to get information. That's correct. And in fact, if during the course of the accommodative bargaining, the parties can resolve it and the union can agree, well, we don't need X, Y, or Z, or the company can say, what if we give you A, B, and E? And they can resolve those kinds of things. Even had there been some sort of non-disclosure agreement, anything can be, hopefully, and that's the hope, can be worked out in bargaining. And to the extent that right here, this solution that the board has crafted preserves precedent in the circuit courts as well as preserves the fact that there is a violation of the act, but also just the remedy makes it such that any legitimate interest that an employer would have to offer to accommodate is no longer something that has to be done such that the employer waives its rights. How does it work if the employer and the union bargains over is acting in good faith, but they just can't reach an agreement? Right. Or have any authority to resolve it, or is it just the employer never turns anything over because it was acting in good faith and the bargaining didn't reach a conclusion? Right. If there was a good faith impasse and there is no charge filed by the general counsel that this was somehow a violation of the duty to bargain, then yes, you are correct. Then whatever the employer has agreed to or not at that time, should there not be an unfair labor practice complaint, that's correct, would not be turned over. But the hope is, given the bargaining processes, there always is, that there would be some give and take and that something would be resolved. Or if the employer was acting, the check on the employer deciding to not act in good faith is exactly as the board contemplated an unfair labor practice charge, where that could be litigated such that the information, you know, the board and then the court could decide whether it was required to be turned over. But thank you. And what about the authority and the precedent saying that the board can weigh confidentiality interests itself in the compliance proceeding or in conjunction with this in order to turn over documents? Isn't there a precedent that says that? Sure. And the board recognized that its decision, there's one case which it has otherwise never, the board has never followed its traditional practice has been what the precedent had been before, which is allowing it to be turned over. And the board just decided that the better way to go would be to handle it the way that it did in this case. Indeed, there was no, I would point out, as we did in our brief, the union never raised that particular claim or objection to the policy choice of the board in its motion for reconsideration. So our position is that would be jurisdictionally barred from this court's consideration. But nonetheless, yes, the board did consider that and decided it was better overall for labor law policy to implement the Mr. Peart, I want to ask you something about the board's decision that employee complaints are no longer presumptively relevant. Sure. You say that's not final. Correct. Right? Because it's going back to the region. But the union says in its reply brief, that if the region rules against it, it has no way to challenge that issue. There's no appeal. That's correct. Isn't that right? Sure. It's a very unlikely chance that in this instance, the region or the general counsel didn't issue a complaint if the company challenges the relevance of a more specific and demonstrated relevance interest. While it's true, if there is no complaint issue, that is unreviewable. The test in terms of ripeness, we talk about ripeness, is whether the harm to the petitioner outweighs the board's interest in having the benefit of crystallizing its decision, its reasoning. But ripeness, when a court finds something isn't right, implicit in that finding is that the issue can come up later. Sure, it can come. Well, excuse me. Their point is that it can't here. That if the region, when this goes back, concludes that these are not relevant, they'll have no appeal. So this is their only shot at that issue. So why aren't they right that it's final? Sure. The board's position is that simply because there is a very small risk that there would not be any complaint issued, should there not be information provided here, then the fact that the union wouldn't get to challenge the decision doesn't outweigh the fact that this issue is not one for which the board has issued a final decision. Do you have a case that supports that? The case that we cite in our brief. Pardon me? I'm sorry. I said the case that we cite in our brief, the sheet metal case that we talk about, in terms of when, if there is an issue and it comes back, if it comes back up, then the board would be able to further crystallize its decision on what is presumptive versus what is not presumptive but yet is relevant. And as we've said in our brief, should the court disagree? As you agree, it might not be able to come back up. That's correct. Very small chance. Okay. But even if there's a small chance, doesn't that mean this is final? And then I asked you for a citation for the proposition that, well, yes, it's final because there's only a remote chance that the union won't succeed before the region. That's what you're basically telling us. You're saying, don't worry about this. There's only a remote chance that the union won't succeed in the region, right? That's correct. And I don't have a specific site for that specific proposition. I don't know of one either. That's what's troubling me here. Okay. To the extent that we are saying that the test as we understand it for ripeness and for finality would not... Correct. Okay. All right. Okay. Judge Wilkins or Judge Randolph, anything else? No. No. Okay. Mr. Rosenbaum, you are out of time, but you can take two minutes if you need it. Okay. Judge Wilkins, you asked a fair question about why the union can't go to its members. I think there's a pretty clear answer. The members may not know, they may have conflicting views, and the board has always held that if a union has an alternative source, that doesn't excuse the employer from providing its version of what these rules are. And Judge Wilkins, I think you've asked sort of a fair question about, is there a way of resolving it? And Ms. Beard is correct that I didn't specifically say there's this compliance proceeding, but the sheet metal workers case that Judge Taylor referred to was a situation where the issue of backpaying money only was going back to a compliance proceeding, where the issue of burdens of proof could be raised and litigated. Theoretically, what the board could have done in this case, and I think is still available, is to say, all right, we're ordering the production of these documents, and we're going to leave to a compliance proceeding any issues about confidentiality or other issues that were raised by the employer in a compliance proceeding. And that's what Detroit Edison says in all the confidentiality cases they say, and this court has already recognized this in the OCW case, that if the parties can't resolve it in negotiations, the union files an unfair labor practice charge, and then the interests are balanced. The employer's interest in confidentiality is balanced against the union's interest in need, and if the balance is in favor of the union, the board orders the employer to turn it over. And that process is the way the board does it. That could have been a solution to this problem here to give the union a fair chance to resolve it. Just I want to conclude by saying I recognize that there's some attractiveness to the but the statute says that's its choice. It either bargains or doesn't bargain, can't go halfway, because that would infect all sorts of other regimes of the act dealing with bargaining. Thank you. All right. Okay, thank you, Ms. Beard, Mr. Rosenbaum. Thank you both. The case is submitted. Thank you.
judges: Tatel, Wilkins, Randolph